## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

JOHN CLEMA and MICHAEL SEGURA,

        Plaintiffs,

v.                                       Civ. No. 11-00807 MV/RHS

PAUL COLOMBE, individually and in his
official capacity, THE BOARD OF COUNTY
COMMISSIONERS of SANTA FE COUNTY,
GREG SOLANO, individually and in his
capacity as SANTA FE COUNTY SHERIFF,
and THE UNITED STATES OF AMERICA,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Paul Colombe's Motion for Summary Judgment [Doc. 71]. The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the Motion for Summary Judgment is not well taken and will be DENIED.

## <u>BACKGROUND</u>

The facts supported by evidence, viewed in the light most favorable to Plaintiffs Michael Segura and John Clema, as the parties opposing summary judgment, are as follows. *Cf. Cavanaugh v. Woods Cross City*, 625 F.3d 661, 662 (10th Cir. 2010). At approximately 11:00 p.m. on July 10, 2009, Defendant Paul Colombe, dressed in his full Pueblo of Tesuque Tribal Police Department uniform, driving a fully-marked Tesuque Pueblo tribal police vehicle, and displaying a tribal badge of office, conducted a traffic stop of an automobile driving within Tesuque Pueblo. [Doc. 72 at 3]. Defendant Colombe identified himself as an officer of the

Pueblo of Tesuque Tribal Police Department.   [*Id.* at 3].   Defendant Colombe maintains that he conducted the traffic stop because the driver of the vehicle, Deborah Bransford-Wakefield, failed to come to a complete stop at a stop sign.   [Doc. 30-9].[1]

When Defendant Colombe made contact with the driver, he noticed a smell of alcohol emanating from the vehicle.   [Doc. 72 at 3].   Defendant Colombe questioned Bransford-Wakefield, who denied having consumed alcohol, but indicated the passengers had been drinking.   [*Id.*].   Plaintiff Clema, the front seat passenger in the vehicle, confirmed that he had been drinking.   [*Id.* at 4].   Plaintiff Segura, not of Native American descent, was the back seat passenger in the vehicle.[2]

Defendant Colombe conducted a field sobriety test on Bransford-Wakefield and determined that she was impaired.   [*Id.*].   Defendant Colombe placed Bransford-Wakefield in custody for driving while intoxicated and thereafter administered a breathalyzer test.   [Doc. 30-4 at 1].   The breathalyzer test showed that Bransford-Wakefield had a blood alcohol concentration of eight one hundredths (.08), which is equal to the minimum threshold at which one is defined as legally intoxicated under New Mexico law.   [Doc. 73 at 6].   Defendant Colombe testified under oath at Bransford-Wakefield's driver's license revocation hearing that she did not have trouble getting out of the car, she was not stumbling or falling over, she did not have problems standing up or communicating with him, her speech was not slurred, she did not have trouble following his pen

---

[1]   Throughout this Memorandum Opinion and Order, the Court refers to Document 30 and its attachments.   Document 30 and its attachments can be found in the docket of consolidated cause number 11-CV-00926 MV/WDS.

[2]   Plaintiff Clema does not present evidence in response to the Motion for Summary Judgment regarding Clema's national origin.

with her eyes on a field sobriety test, her balance was fine when she was walking, and the only signs of impairment were bloodshot watery eyes and the smell of alcohol.   [Doc. 30-10 at 13-19].

Bransford-Wakefield was prosecuted for driving under the influence in the First Judicial District, State of New Mexico, County of Santa Fe.   The Honorable Stephen Pfeffer, Chief District Court Judge, granted Bransford-Wakefield's motion to suppress, concluding that Defendant Colombe's traffic stop was not supported by reasonable suspicion that the driver had violated the law requiring a vehicle to come to a complete stop.   [Doc. 30-11 at 1].   Judge Pfeffer, therefore, dismissed the driving under the influence charge against Bransford-Wakefield.   [*Id.*].

After arresting Bransford-Wakefield, Defendant Colombe asked Plaintiff Clema for the name of an individual who could drive the vehicle from the scene, but Clema failed to provide him with a name.   [Doc. 72 at 4; Doc. 73 at 8].   Plaintiff Clema instead requested that Defendant Colombe administrate a sobriety test on Clema to determine whether Clema could drive the vehicle.   [*Id.*; Doc. 72 at 4].   Defendant Colombe declined to administer the test and instead placed Clema under arrest for Parties to a Crime, N.M. Stat. Ann. § 66-8-120.   [*Id.*].

Defendant Colombe thereafter asked Plaintiff Segura to exit the vehicle.   [*Id.*]   Defendant Colombe inquired whether Segura had any identification, and Segura responded that he did not. [Doc. 30-2].   Defendant Colombe asked Plaintiff Segura to identify his name, and Segura responded by stating "Michael Segura."   [*Id.*].   Defendant Colombe then asked how much alcohol Segura had consumed and inquired whether Segura understood that allowing someone to operate a motor vehicle "knowing [the driver] has been drinking" constitutes a crime.   [*Id.*]. Defendant Colombe, after posing these questions, inquired, "Do you understand that Mr. Seg . . . what was your last name again sir?"   [*Id.*].   Plaintiff Segura at first responded by stating, "Segura," but immediately thereafter informed Defendant Colombe that his name was "Smith."

3

[*Id.*].   Plaintiff Segura repeated that his name was "Smith" or "Michael Smith" four times.   [*Id.*].

When Defendant Colombe asked Plaintiff Segura for his date of birth, Segura twice responded by stating "today."   [*Id.*]   When Defendant Colombe warned Segura, "You're being charged with concealed identify if you are not gonna tell . . . ," Segura responded, "Ok.   Whatever.   I don't give a shit."   [*Id.*].   Thereafter, Defendant Colombe informed Plaintiff Segura that Colombe was charging Segura with the crime of Concealing Identity and that Segura would not be able to bond out of jail.   [*Id.*].   At this point, approximately forty seconds after identifying himself as "Michael Smith," Plaintiff Segura stated, "I'm Michael Segura."   [*Id.*].

Plaintiffs Segura and Clema were transported to the Pueblo of Tesuque Tribal Police Department, where they were given a copy of their criminal complaints, and then transported to the Santa Fe County Adult Detention Facility, where they were booked.   Defendant Colombe filed a criminal complaint in the Santa Fe County Magistrate Court against Plaintiff Segura, charging Segura with Parties to a Crime, N.M. Stat. Ann. § 66-8-120, and Concealing Identity, N.M. Stat. Ann. § 30-22-3.   [Doc. 72 at 4-5]   Defendant Colombe filed a criminal complaint in the Santa Fe County Magistrate Court against Plaintiff Clema, charging him with Parties to a Crime, N.M. Stat. Ann. § 66-8-120.   [*Id.*].   Plaintiff Segura subsequently was charged in the First Judicial Court, State of New Mexico, County of Santa Fe, for the crime of Concealing Identity.   [Doc. 30-8].

The foregoing offenses are crimes pursuant to New Mexico—but not Tesuque tribal—law.   [Doc. 73 at 5, 9]   The charges against Plaintiff Segura were prosecuted by a prosecutor employed by the County of Santa Fe.   [Doc. 30-8]   The charges against both Plaintiffs ultimately were dismissed. [*Id.*; Doc. 72 at 5].

Defendant Colombe was duly appointed and commissioned as a Deputy Sheriff in the County of Santa Fe at the time he arrested Plaintiffs.   [Doc. 73 at 11; Doc. 30-12].   In the Santa

Fe County Sheriff's Department Oath of Office, Defendant Colombe swore as follows:   "I, Paul J. Colombe, having been appointed and commissioned as a Deputy Sheriff in the County of Santa Fe, State of New Mexico, do solemnly swear that I will support the Constitution of the United States, the Constitution and laws of the State of New Mexico, and the laws of the County of Santa Fe and faithfully and impartially discharge the duties of said office to the best of my ability."   [*Id.*].   The foregoing Oath of Office does not identify Defendant Colombe as cross-deputized.   [*Id.*; Doc. 73 at 11].   In his affidavit, Defendant Colombe asserts that he is cross-commissioned as a Santa Fe County Deputy Sheriff.   [*Id.* at 7].

From January 2004 through April 2010, Defendant Colombe was employed as a full-time police officer by the Pueblo of Tesuque Tribal Police Department.   During this same time period, Defendant Colombe's salary and employment benefits were paid by the Pueblo of Tesuque Tribal Police Department and no part of his salary or benefits was paid by the Santa Fe County Sheriff's Department or the County of Santa Fe.   [Doc. 72 at 6].   Also during this time period, (1) the Santa Fe County Sheriff's Department had no right to promote, demote, discipline and/or fire Defendant Colombe, (2) Defendant Colombe was not subject to the Sheriff's Department's rules, regulations, policies, or procedures, (3) the Santa Fe County Sheriff's Department did not provide supervise or oversee Defendant Colombe or assign work to him or control the manner or means of his performance as a law enforcement officer, and (4) the Santa Fe County Sheriff's Department did not provide, pay for, or facilitate any training to or of Defendant Colombe.   [*Id.*].   The Santa Fe County Sheriff's Department, however, did possess the right to revoke Defendant Colombe's appointment and commission as a Santa Fe County Deputy Sheriff.   [*Id.*].

Defendant Colombe did not report the arrest of Plaintiffs Segura and Clema to any member of the Santa Fe County Sheriff's Department or obtain the approval of the Santa Fe County

Sheriff's Department for the arrests.   [*Id.*].

## STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999).   Under Rule 56(c), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).   Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."   *Id.* at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted).   The moving party need not negate the nonmovant's claim, but rather must only show "that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).   Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."   *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted).   The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo v. Neighborhood Health Ctrs., Inc.*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'"

*Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).   There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.   *See Anderson,* 477 U.S. at 248.   Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).   If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law.   *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

The standard for analyzing a motion for summary judgment shifts slightly if, as here, a defendant raises qualified immunity as a defense.   The qualified immunity defense was created to shield public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).   It provides immunity from suit and not merely from liability.   *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).   It therefore spares defendants the burden of going forward with trial.   *See Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995) (citation omitted).

Once a moving party raises the defense of qualified immunity, the nonmoving party must (1) assert facts which, if true, would constitute a violation of a constitutional right, and (2) demonstrate that the "right was clearly established at the time such that a reasonable person in the [movant's] position would have known that [the] conduct violated the right." *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996) (citations omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009).   Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the

7

circumstances in the particular case at hand." *Id.* at 236.   If a nonmoving party fails to satisfy its

two-part burden, a court must grant the moving party qualified immunity.  *See Medina v. Cram*,

252 F.3d 1124, 1128 (10th Cir. 2001).   If the nonmoving party, however, successfully

demonstrates the violation of a clearly established right, the moving party assumes the normal

summary judgment burden of demonstrating that no genuine issue of material fact exists that

would defeat its claim for qualified immunity.   *See Woodward v. City of Worland*, 977 F.2d

1392, 1396-97 (10th Cir. 1992) (citations omitted), *cert. denied*, 509 U.S. 923 (1993).

## DISCUSSION

I.      Plaintiffs' State Law Claims Under the New Mexico Tort Claims Act.

Defendant Colombe moves for summary judgment on Plaintiffs' state law claims under the

New Mexico Tort Claims Act ("NMTCA" or "Act").   In support of his motion, Defendant

Colombe argues that the Court already concluded in its Memorandum Opinion and Order, filed

September 24, 2012 ("Memorandum Opinion"), that Colombe is not a "public employee" as

defined by New Mexico Statutes Annotated Section 41-4-3(F).   [Doc. 46 at 7-14].   According to

Defendant Colombe, this holding of the Court's mandates dismissal of Plaintiffs' state tort claims

against him, just as it compelled dismissal of the Plaintiffs' state claims against the Board of

County Commissioners of Santa Fe County and the Santa Fe County Sheriff Greg Solano

(collectively, the "County Defendants").

The New Mexico legislature, by enacting the NMTCA, has "declared [it] to be the public

policy of New Mexico that governmental entities and public employees shall only be liable within

the limitations of the Tort Claims Act and in accordance with the principles established in that

act."  N.M. Stat. Ann. § 41-4-2(A).   Thus, under the NMTCA, any "governmental entity" or

"public employee" acting within scope of his or her duties is immune from tort liability except as

waived by the Act.   *See M.D.R. v. State ex rel. Human Servs. Dep't*, 836 P.2d 106, 107 (N.M. 1992) (citations omitted); *see also* N.M. Stat. Ann. § 41-4-4(A) ("[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by . . . Sections 41-4-5 through 41-4-12 NMSA 1978").

In its September 24, 2012, Memorandum Opinion, the Court granted the motion for summary judgment filed by the County Defendants seeking judgment in their favor on Plaintiff Segura's respondeat superior claims under the NMTCA.   The Court held that immunity shielded the County Defendants under the NMTCA and that none of the Act's exceptions to that immunity applied.   [Doc. 46 at 8-14].   The Court explained that to prevail under the NMTCA on a respondeat superior charge against a supervisory entity, a plaintiff must establish (1) a negligent "public employee," as defined by the NMTCA, (2) who meets one of the NMTCA's waiver exceptions under Sections 41-4-5 to 41-4-12 of the Act, and (3) a defendant "governmental entity," as defined by the Act, that has immediate supervisory responsibilities over the employee. [Doc. 46 at 5 (citing *Silva v. State*, 745 P.2d 380, 385 (N.M. 1987), *limited on other grounds by Archebeque v. Moya*, 866 P.2d 344 (N.M. 1993)].   The Court held that the County Defendants were entitled to judgment in their favor as a matter of law, in part because Plaintiff Segura had failed to establish the first requirement—namely, that Defendant Colombe constituted a "public employee," as defined by Section 41-4-3(F) of the Act.   [Doc. 46 at 6-14].   The Court held that Section 41-4-3(F) defines a "public employee" as "an officer, employee or servant of a governmental entity, excluding independent contractors."   N.M. Stat. Ann. § 41-4-3(F).   The Court concluded that Defendant Colombe was not a "public employee" because he was an independent contractor of the Santa Fe County Sheriff's Department.   [*Id.*].

In the Motion for Summary Judgment presently before the Court, Defendant Colombe

argues that the same reasoning that supported the Court's holding in its Memorandum Opinion that the County Defendants were protected by immunity under the NMTCA and that no exception to immunity applied also supports the Court's conclusion here that Defendant Colombe is not excepted from immunity under the Act.[3]   Defendant Colombe's argument, however, is flawed.

Defendant Colombe's contention that he is not excepted from immunity under the NMTCA assumes that he is covered by the Act's grant of immunity.   The Act, however, only provides immunity for a "governmental entity" or "public employee."   N.M. Stat. Ann. § 41-4-4(A) ("[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by . . . Sections 41-4-5 through 41-4-12 NMSA 1978"); *M.D.R.*, 836 P.2d at 107.   While the County Defendants constitute "governmental entities" covered by the Act's immunity, the Court already has held that Defendant Colombe does not constitute a covered "public employee" within the meaning of the NMTCA.   [Doc. 46 at 6-14].   The same reasoning that supported this latter conclusion in the September 24, 2012, Memorandum Opinion is equally applicable here, and the Court therefore incorporates that reasoning herein.   [*Id.*].   Because Defendant Colombe does not constitute a

---

[3]      Defendant Colombe does not state with clarity the precise nature of his argument in support of dismissal of Plaintiffs' state tort claims.   After asserting in conclusory form that the state tort claims should be dismissed, Defendant Colombe refers to the portions of the Court's September 24, 2012, Memorandum Opinion holding that Defendant Colombe was not a "public employee" within the meaning of the NMTCA.   [Doc. 72 at 8].   Defendant Colombe also refers to the Court's other holdings that he was not a "law enforcement officer" as defined by the Act or a salaried pubic employee of the Santa Fe County Sheriff's Department.   [*Id.*].   Defendant Colombe concludes that the same tort claims that the Court dismissed against the County Defendants in its Memorandum Opinion should be dismissed against Defendant Colombe.   [*Id.*]. Because the sole argument Defendant Colombe presents in favor of dismissal of Plaintiffs' state tort claims is based upon the Court's dismissal of the state tort claims against the County Defendants, the Court assumes that Colombe argues that the same reasoning for dismissal of the state claims against the County Defendants supports dismissal of the state claims against him.

"public employee" as defined by the NMTCA, he is not entitled to immunity under the NMTCA. The Court therefore denies Defendant Colombe's Motion for Summary Judgment on Plaintiffs' state tort claims.

II.     Plaintiffs' Section 1983 Claims Against Defendant Colombe in his Official Capacity.

Plaintiffs Segura and Clema bring both official and individual capacity Section 1983 claims against Defendant Colombe for allegedly arresting them without probable cause in violation of the Fourth Amendment.   Defendant Colombe moves for summary judgment on Plaintiffs' Section 1983 official capacity claims on the ground that the Pueblo of Tesuque is a sovereign and sovereign immunity protects both the Pueblo and its employees acting within the scope of their permissibly-delegated official powers.   [Doc. 72 at 10].   Although Plaintiffs allege that Defendant Colombe was acting within the scope of his duties as a Santa Fe County Deputy Sheriff, Colombe maintains that he was working in his capacity as an officer of the Pueblo of Tesuque Tribal Police Department.   [*Id.* at 10 n.3].   Defendant Colombe attempts to buttress this argument by pointing out that while the Court held in its September 24, 2012, Memorandum Opinion that he was acting in his capacity as a Deputy Sheriff for Santa Fe County, the Court also concluded that he was an independent contractor and not an employee of the Sheriff's Department. [*Id.* at 10-11].

"As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."   *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998), *cert. denied*, 549 U.S. 1167 (2007); *accord Burrell v. Armijo*, 456 F.3d 1159, 1174 (10th Cir. 2006).   An Indian tribe's sovereign immunity may extend to tribe officials, but only when the official is acting within the scope of his official powers that the tribe has delegated to him.   *See id.* ("'sovereign immunity does not extend to an official when the

11

official is acting as an individual or outside the scope of those powers that have been delegated to him'") (quoting *Tenneco Oil Co. v. Sac & Fox Tribe of Indians*, 725 F.2d 572, 576 n.1 (10th Cir. 1984) (McKay, J., concurring)).   Thus, "'[w]hen a complaint alleges that the named officer defendants have acted outside the amount of authority that the sovereign is capable of bestowing, an exception to the doctrine of sovereign immunity is invoked.'"  *Id.* (quoting *Tenneco*, 725 F.2d at 574) (citing *Burlington N.R. Co. v. Blackfeet Tribe*, 924 F.2d 899, 902 (9th Cir. 1991) (stating that a tribe's immunity extends to officials "acting in their representative capacity and within the scope of their valid authority")).

The Court is not persuaded by Defendant Colombe's argument that he was acting in his capacity as a tribal police officer when he arrested Plaintiffs Segura and Clema.  The Court already held in its September 24, 2012, Memorandum Opinion, that Defendant Colombe was acting in his capacity as a Deputy Sheriff for the Santa Fe County Sheriff's Department when he arrested Plaintiff Segura.   [Doc. 46 at 8-9].   The fact that the Court also concluded that Defendant Colombe was an independent contractor of the Santa Fe County Sheriff's Department, and not an employee, is irrelevant to the question whether Colombe was acting in his capacity as a Santa Fe County Sheriff or as a police officer for the Pueblo of Tesuque Tribal Police Department. The Court's holding that Defendant Colombe was an independent contractor, therefore, does not change the Court's conclusion that Colombe undertook the arrest of Plaintiff Segura in his capacity as a Deputy Sheriff.

In its September 24, 2012, Memorandum Opinion, the Court reasoned that, absent the commission from the Sheriff's Department, Defendant Colombe lacked the jurisdiction to charge and prosecute a non-Indian for state criminal violations occurring on Indian land.   [Doc. 46 at 8 (citing *United States v. Green*, No. 04-5166, 2005 WL 1799823, at *2 (10th Cir. 2005) (citation

12

omitted))].   The Court further reasoned that the offenses Parties to a Crime and Concealing Identity are crimes pursuant to New Mexico, and not Tesuque tribal, law, and that these crimes were prosecuted in the State of New Mexico's courts.   [*See id.* (citing N.M. Stat. Ann. §§ 66-8-120, 30-22-3)].   The Court therefore concluded that "Defendant Colombe had no authority to undertake the[] actions [of arresting someone for Parties to a Crime or Concealing Identity] as a Tesuque tribal police officer," and "that Defendant Colombe was acting in his capacity as a Deputy Sheriff for the County of Santa Fe."   [*Id.* at 8-9].

Defendant Colombe acknowledges that an Indian tribe's sovereign immunity extends to tribe officials only when the official is acting within the scope of his official powers that the tribe has delegated to him.   *See Burrell*, 456 F.3d at 1174 ("'When . . . the named officer defendant[ has] acted outside the amount of authority that the sovereign is capable of bestowing, an exception to the doctrine of sovereign immunity is invoked.'") (quoting *Tenneco*, 725 F.2d at 574) (additional citation omitted).   Here, because Defendant Colombe did not have authority vested by the Pueblo of Tesuque Tribe to arrest and prosecute Plaintiffs for the state offenses of Parties to a Crime and Concealing Identity, Colombe was acting beyond the scope of his official tribal powers delegated to him by the Pueblo of Tesuque.   Accordingly, Defendant Colombe is not protected by the tribe's sovereign immunity, and the Court therefore denies Defendant Colombe's Motion for Summary seeking dismissal of Plaintiffs' official capacity claims on the ground of sovereign immunity.

III.   Plaintiffs' Section 1983 Claims Against Defendant Colombe in his Individual Capacity.

Plaintiffs Segura and Clema also bring individual capacity Section 1983 claims against Defendant Colombe for allegedly arresting them without probable cause in violation of the Fourth Amendment.   Defendant Colombe asks the Court to grant summary judgment in his favor on

13

Plaintiffs' Section 1983 individual capacity claims on the ground that he is entitled to qualified immunity.  A plaintiff opposing a motion for summary judgment on the ground of qualified immunity must (1) assert facts which, if true, would constitute a violation of a constitutional right, and (2) demonstrate that the "right was clearly established at the time such that a reasonable person in the [movant's] position would have known that [the] conduct violated the right."  *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996) (citations omitted).  Defendant Colombe argues that Plaintiffs have not satisfied this burden.

The Supreme Court of the United States has held that district courts may exercise discretion in deciding which of the two prongs to address first.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  The Court first addresses whether Plaintiffs have stated a constitutional violation with respect to their arrests for Parties to a Crime and whether Plaintiff Segura has stated a constitutional violation with respect to his arrest for Concealing Identity.  Because the Court concludes that Plaintiffs have stated a constitutional violation, the Court next evaluates whether Plaintiffs have demonstrated that the constitutional rights violated were clearly established.

    A.    <u>Constitutional Violation</u>.

Section 1983 provides civil redress for deprivation of constitutional rights by persons acting under color of state law.  *See Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995); 42 U.S.C. § 1983.  Section 1983 was enacted "to provide protection to those persons wronged by the misuse of power."  *Owen v. City of Independence*, 445 U.S. 622, 650 (1980) (citations omitted).  Because "Section 1983 creates no substantive civil rights, but rather only a procedural mechanism for enforcing them," the Court's analysis focuses on the alleged violation of the Fourth Amendment.  *Wilson*, 52 F.3d at 1552 (citation omitted).

To determine whether Plaintiffs have satisfied the first part of their qualified immunity

burden of asserting facts that constitute a constitutional violation for unlawful seizure, the Court must look to the substantive law in effect at the time the conduct in question occurred. *See Saucier v. Katz*, 533 U.S. 194, 199 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223. Under substantive Fourth Amendment law, a warrantless arrest is permissible if there is probable cause to believe that the arrestee committed a crime. *See Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). "'Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.'" *Id.* (quoting *Jones v. City & County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988)). Probable cause must exist at the time of the arrest. *See Titus v. Ahlm*, No. 07-2213, 2008 WL 4726233, at *3 (10th Cir. Oct. 28, 2008) (citation omitted). The Court examines the elements of the underlying offenses of Parties to a Crime and Concealing Identity to evaluate whether the facts and circumstances within Defendant Colombe's knowledge at the time of the arrest were sufficient to lead a prudent person to believe that Plaintiffs were committing a crime. *See Walker v. McLellan*, No. 94-1494, 1995 WL 238329, at *2 (10th Cir. Apr. 21), *cert. denied*, 516 U.S. 990 (1995).

      1.    <u>Parties to a Crime</u>.

      The offense of Parties to a Crime is set forth in Section 66-8-120 of New Mexico Statutes Annotated, and provides that

> [e]very person who commits, attempts to commit, conspires to commit or aids or abets in the commission of any act declared herein to be a crime, whether individually or in connection with one or more other persons or as a principal, agent or accessory, shall be guilty of such offense, and every person who falsely, fraudulently, forcibly or willfully induces, causes, coerces, requires, permits or directs another to violate any provision of the Motor Vehicle Code or any other law of this state pertaining to motor vehicles is likewise guilty of such offense.

N.M. Stat. Ann. § 66-8-120.   Defendant Colombe contends that he had probable cause to arrest Plaintiffs under this statute, because "plaintiffs either attempted to commit, or aided and abetted in the commission of the crime of driving while intoxicated when Plaintiff Clema failed to provide the name of an individual who could transport the car and passengers from the scene," and when "[p]laintiffs willfully induced or caused or permitted the commission of the crime."   [Doc. 72 at 5].

> a.   Aiding or Abetting Driving Under the Influence.

The New Mexico Court of Appeals has held that courts should define the terms "aids or abets" in Section 66-8-120 with reference to the New Mexico Criminal Code's definitions of accessory liability and the case law interpreting those definitions.   *See State v. Marquez*, 238 P.3d 880, 883-84 (N.M. Ct. App. 2009) (explaining that the court has "no quarrel with Defendant's argument that the definition of accessory liability under the Criminal Code is applicable to the application of accessory liability as stated in Section 66-8-120").[4]   The New Mexico Criminal Code provides that "[a] person may be charged with and convicted of the crime as an accessory if he procures, counsels, aids or abets in its commission."   N.M. Stat. Ann. § 30-1-13.   The New Mexico Uniform Jury Instructions set forth the three elements necessary to find a defendant guilty

---

[4]      In *State v. Marquez*, the Court of Appeals specifically considered whether the definition of "aid and abet" from the New Mexico Criminal Code applied to aiding and abetting a traffic offense under the Section 66-8-120 of the Motor Vehicle Code.   *See* 238 P.3d at 883.   The *Marquez* court concluded that the Criminal Code's definition applied, reasoning that it is presumed that "'the [L]egislature was aware of existing . . . law [in the Criminal Code] and did not intend to enact a law [*i.e.*, Section 66-8-120 in the Motor Vehicle Code] inconsistent with existing law [the Criminal Code].'"   *Id.* (quoting *State v. Chavez*, 174 P.3d 988 (N.M. 2008)).   The *Marquez* court therefore applied the substantive definitions and interpretations of the accessory provisions in the Criminal Code to Section 66-8-120 in the Motor Vehicle Code.   *See id.* (citation omitted).

as an accessory to a crime:  '(1) The defendant intended that the crime be committed; (2) The crime was committed; [and] (3) The defendant helped, encouraged or caused the crime to be committed.'"  *State v. Carrasco*, 946 P.2d 1075, 1079 (N.M. 1997) (quoting N.M. Rules Ann., U.J.I. 14-2822).   The New Mexico Supreme Court has confirmed that "[t]he uniform jury instruction for accessory liability incorporates the intent requirement and correctly states the standard for a finding that a defendant is guilty as an accessory."  *Id.* (citing *State v. Bankert*, 875 P.2d 370, 374 (N.M. 1994)).

The parties do not dispute that Bransford-Wakefield committed the crime of driving under the influence.   The parties agree that Bransford-Wakefield's blood alcohol content was .08, which exceeded the legal limit.   *See* N.M. Stat. Ann. § 66-8-102(C)(1) (stating that it shall be unlawful for "a person to drive a vehicle in this state if the person has an alcohol concentration of eight one hundredths or more in the person's blood or breath within three hours of driving the vehicle and the alcohol concentration results from alcohol consumed before or while driving the vehicle").  Therefore, the Court concludes that, on the facts before the Court, Defendant Colombe had probable cause to believe that the second element of accomplice liability—*i.e.*, that the crime was committed—had been satisfied.

The Court next considers whether Plaintiffs have stated a constitutional violation for arrest without probable cause with respect to the first element (the *mens rea*) and the third element (the *actus reas*) of accomplice liability.   With respect to the first *mens rea* element—the requirement that the defendant intended the crime to be committed—the Supreme Court of New Mexico has held that an accessory must share the criminal intent of the principal, *see Carrasco*, 946 P.2d at 1079 (citation omitted), rather than simply have mere knowledge that the accomplice's assistance will help in the commission of the offense, *see* Candace Courteau, The Mental Element Required

17

for Accomplice Liability: A Topic Note, 59 La. L. Rev. 328-29 (1998) (explaining that "[a]n accomplice must really have two mental states"—"1) to assist the principal, and 2) to commit the substantive offense"—and that, with respect to the second mental state, jurisdictions have adopted standards ranging from "mere knowledge that the accomplice's assistance will help in the commission of the offense, to . . . the accomplice's own intent to commit the offense"). The crime of driving under the influence, however, does not have a requisite mental state. *See State v. Sims*, 236 P.3d 642, 650 (N.M. 2010) (we "reaffirm that the DWI provision proscribing driving while intoxicated is a strict liability crime and requires no mens rea for conviction").

It is an open question in New Mexico whether an accomplice can *share a mental state* with a principal—and thus satisfy the first element of accomplice liability—where, as here, the principal's crime of driving under the influence of an intoxicating substance is a crime of strict liability with *no mental state*. In *State v. Marquez*, the New Mexico Court of Appeals implied that one could aid and abet the strict liability crime of driving under the influence, *see* 238 P.3d at 884 (stating in dicta that the "[t]he focus of the inquiry into a defendant's intent [would be] slightly different, depending on whether the charge is aiding and abetting driving while intoxicated," which the court recognized requires no mental state, than it would be if the principal's crime was homicide or great bodily injury by vehicle, which requires a mental state, *i.e.*, intent), but the court did not decide the question because it was not at issue. For purposes of this Memorandum Opinion and Order, the Court assumes that one can be liable as an accomplice to the crime of driving under the influence, even though the crime of driving under the influence has no mens rea component.

The Court, however, need not decide whether Plaintiffs have stated facts sufficient to establish that Defendant Colombe lacked probable cause to believe that Plaintiffs had the requisite

intent to aid and abet the crime of driving under the influence—*i.e.*, the *mens rea* element of accomplice liability—because the Court concludes that Plaintiffs have asserted facts which, if true, indicate that Defendant Colombe lacked probable cause to believe that Plaintiffs satisfied the third *actus reas* element of accomplice liability.   The Court holds that the absence of any evidence of this third element alone precludes a finding of probable cause to arrest Plaintiffs for aiding and abetting the crime of driving under the influence.

The *actus reas* element necessary to hold a defendant liable as an accomplice requires that the alleged accomplice helped, encouraged, or caused the principal's crime to be committed.   *Cf. Carrasco*, 946 P.2d at 1079 (quoting N.M. Rules Ann., U.J.I. 14-2822).   The New Mexico Court of Appeals has explained that satisfaction of the third element requires an "outward manifestation," and "expression of approval," or a "shared purpose."   *Marquez*, 238 P.3d at 883. The court has indicated that the requisite "expression of partnership in an unlawful enterprise may be shown by words, actions, signs, conduct, encouragement, or any method sufficient to incite, encourage, or instigate commission of the offense."   *Id.* (citation omitted).

The facts asserted by Plaintiffs do not show any expression of a partnership between Plaintiffs and Bransford-Wakefield in the unlawful enterprise of driving while intoxicated. Plaintiffs did not show encouragement or otherwise incite or instigate commission of the offense by their words, actions, signs, or conduct.   *Cf. id.*   The only evidence before the Court showing even a remote connection between Plaintiffs and Defendant Bransford-Wakefield's commission of the crime of driving while intoxicated is Plaintiff Segura's admission that he knew Bransford-Wakefield had been drinking.   [Doc. 30-3 at 1].   Plaintiff Segura's acknowledgment that Bransford-Wakefield had been drinking, however, implies only that Segura was aware that Bransford-Wakefield had consumed some amount of alcohol, but does not establish that Segura

19

was aware that Bransford-Wakefield was intoxicated beyond the legal limit and had committed a crime.   An awareness of the consumption of alcohol prior to driving—in and of itself—is not sufficient to create a partnership in the unlawful enterprise of driving while legally intoxicated.

Rather, an unlawful partnership must be evidenced by sufficient words, actions, signs, or conduct to incite, encourage, or instigate the commission of the offense.   There is no such evidence on the facts presently before the Court.   The "only" evidence suggesting that Bransford-Wakefield was intoxicated is that she had watery, bloodshot eyes and that Defendant Colombe could smell alcohol.   [Doc. 30-10 at 4].   This evidence, even in conjunction with knowledge that Bransford-Wakefield had been drinking, is not sufficient to place Plaintiffs on notice that Bransford-Wakefield was intoxicated and driving in violation of the law.   First, the Court notes that because both Plaintiffs admitted to consuming alcohol themselves, a smell of alcohol would not necessarily be indicative of Bransford-Wakefield's intoxication, particularly when Bransford-Wakefield showed no other signs of impairment other than having watery, bloodshot eyes.   Moreover, having watery bloodshot eyes is not—absent other evidence of intoxication—sufficient to establish that Bransford-Wakefield was intoxicated.   As Defendant Colombe concedes, watery, bloodshot eyes can be caused by other environmental factors, such as allergens.   [*Id.* at 2].

Second, the fact that Bransford-Wakefield had watery, bloodshot eyes and that Defendant Colombe could smell alcohol does not establish knowledge on the part of Plaintiffs that Bransford-Wakefield was intoxicated because Plaintiffs have asserted other facts which, if true, negate knowledge.   Specifically, Plaintiffs point to Defendant Colombe's testimony under oath, which suggests that Bransford-Wakefield was not visibly impaired.   Defendant Colombe testified that Bransford-Wakefield did not have trouble getting out of the car, she was not stumbling or

20

falling over, she did not have problems standing up or communicating with him, her speech was not slurred, she did not have trouble following his pen with her eyes on the field sobriety test, and her balance was fine when she was walking.   [Doc. 30-10 at 13-19].   This evidence suggests that Bransford-Wakefield was not visibly intoxicated and negates knowledge on the part of Plaintiffs that she was legally impaired.

Third, and most importantly, the facts asserted by Plaintiffs—and even those provided by Defendant—do not suggest that Plaintiffs in any way actively helped, encouraged, or caused Bransford-Wakefield to commit the crime of driving under the influence.   Thus, there is no evidence of an unlawful partnership between Plaintiffs and Bransford-Wakefield.   There is no evidence before the Court suggesting that Plaintiffs helped obtain alcohol for Bransford-Wakefield, that they encouraged Bransford-Wakefield to consume alcohol, or that they otherwise caused Bransford-Wakefield to become intoxicated.   The New Mexico Court of Appeals has confirmed that being present for the commission of a crime, even being present with approval, is not sufficient to constitute an outward manifestation or expression of approval or shared purpose or otherwise demonstrate an unlawful partnership.   *See Marquez*, 238 P.3d at 883 (stating that "[n]either mere presence nor presence with mental approbation is sufficient to sustain a conviction as an aider or abettor," and that "[p]resence must be accompanied by some outward manifestation or expression of approval, or shared purpose") (citation omitted).   Because neither the facts asserted by Plaintiffs—nor the evidence presented by Defendant Colombe—shows that Plaintiffs "helped, encouraged or caused the crime [of driving under the influence] to be committed," N.M. Rules Ann., U.J.I. 14-2822; *accord Carrasco*, 946 P.2d 1075, the Court concludes that Plaintiffs have asserted facts that demonstrate that a reasonable officer in Defendant Colombe's position would not have had probable cause to believe that Plaintiffs were aiding and

21

abetting the commission of driving under the influence in violation of Section 66-8-120. Plaintiffs, therefore, have satisfied the first prong of their qualified immunity burden with respect to their Section 1983 unlawful seizure claims premised upon aiding and abetting Bransford-Wakefield in the commission of the crime of driving while intoxicated.  *Compare Marquez*, 238 P.3d at 884-85 (holding that the facts did "suggest a partnership between [the principal and the accessory], where the accessory knew of the principal's intoxicated condition and the accessory nonetheless purchased additional alcohol for the principal and approved of and encouraged the principal's driving of the vehicle).

        b.      <u>Attempt to Drive Under the Influence</u>.

Defendant Colombe also argues that Plaintiff Clema has failed to satisfy the first prong of his qualified immunity burden of asserting facts that constitute a violation of his constitutional right to be free from an unreasonable seizure on a second, independent ground.  Defendant Colombe contends that he had probable cause to arrest Plaintiff Clema for Parties to a Crime, because Clema did not simply aid and abet the crime of driving under the influence but also attempted himself to commit the crime of driving under the influence.[5]  Defendant Colombe maintains that "Plaintiff Clema failed to provide the name of an individual who could transport the car and the passengers from the scene," [Doc. 72], and maintains that Plaintiff Clema "ask[ed Colombe] to allow him to drive the vehicle from the scene," [Doc. 30-4 at 2].  When Defendant

---

[5]      The record contains no facts indicating that Plaintiff Segura asked or attempted to drive the vehicle, and Defendant Colombe does not present any argument as to how Plaintiff Segura would be criminally liable, absent such facts, for attempt to commit the crime of driving while intoxicated.  The Court, therefore, construes the Motion for Summary Judgment as seeking judgment in Defendant Colombe's favor only on the question whether a reasonable officer in his position would have believed he had probable cause to arrest Plaintiff Clema—and not Plaintiff Segura—for the crime of attempt to drive under the influence.

Colombe refused, Plaintiff Clema "insist[ed] that [Colombe] give him a [sobriety] test so that he could drive the vehicle."   [*Id*].

Defendant Colombe cites no authority and provides no argument in support of his proposition that he had probable cause to arrest Plaintiff Clema for attempt to commit driving under the influence.   As a threshold matter, the Court notes that Defendant Colombe did not administer a field sobriety test or breathalyzer test to determine whether Plaintiff Clema was legally intoxicated.   The evidence before the Court relevant to Clema's degree of intoxication is that Clema had slurred speech and bloodshot and watery eyes and that Clema admitted to consuming alcohol.   [Doc. 72 at 4; Doc. 73 at 8; Doc. 30-4 at 2].   Even if the Court were to assume for purposes of argument that Defendant Colombe had probable cause to believe that Plaintiff Clema was legally intoxicated, there is no evidence before the Court suggesting that Defendant Colombe would have had probable cause to believe that Clema was guilty of attempt to commit the crime of *felony* driving under the influence.

Under the New Mexico Criminal Code, to which the Court looks to interpret the definition of "attempt" in Section 66-8-120, *see Marquez*, 238 P.3d at 883-84, one cannot be sentenced for the crime of attempt to commit a misdemeanor.   *See* N.M. Stat. Ann. § 30-28-1.   Rather, unless a statute specifically provides otherwise, the only viable attempt crime under the New Mexico Criminal Code is attempt to commit a felony.   *See id.*; *State v. Sims*, 236 P.3d 642, 650 (N.M. 2010).   A first conviction for either driving under the influence or aggravated driving under the influence constitutes a petty misdemeanor under New Mexico law.   *See id.* § 66-8-102(E); N.M. Stat. Ann. §§ 31-1-2(L), 30-1-6(C); *see also State v. Benjamin C.*, 781 P.2d 795, 798 (N.M. Ct. App.) (first conviction for driving under the influence or aggravated driving under the influence is a petty misdemeanor), *cert. denied*, 781 P.2d 782 (1989).   Only upon a fourth conviction of

driving under the influence or aggravated driving under the influence is a person guilty of committing a felony.  *See* N.M. Stat. Ann. § 66-8-102(G).   Because there is no evidence before the Court that Plaintiff Clema had any prior convictions for driving under the influence, the facts do not indicate that a reasonable officer in Defendant Colombe's position would have believed that he had probable cause to arrest Plaintiff Clema for the crime of attempt to commit felony driving under the influence.

The Court acknowledges that Section 30-28-1's prohibition on the sentencing of a defendant for attempt to commit a misdemeanor, *see* N.M. Stat. Ann. § 30-28-1, is inapplicable if another statute authorizes the alleged attempted misdemeanor.  *See Sims*, 236 P.3d at 650-51 (citation omitted).   While the Supreme Court of New Mexico has not directly held that the legislature intended to create the crime of attempted driving under the influence, in *State v. Sims* the court did hold that when driving under the influence charges are premised not on a defendant driving a motor vehicle but rather only on a defendant exercising "actual physical control" over a vehicle—as evidenced by an overt act—with the general intent to drive, the legislature's decision to equate proof of actual physical control with proof of driving makes the crime analytically similar to attempt.[6]  *Id.* at 650 (citing N.M. Stat. Ann. § 30-28-1).   The *Sims* court therefore concluded that "[i]nsofar as we believe the Legislature equated proof of actual physical control

---

[6]     An actual physical control theory is similar to attempt because a police officer does not directly observe a driver operating a motor vehicle, but rather determines that a would-be driver has exercised actual physical control over the vehicle with the requisite general intent to drive the vehicle—*i.e.*, stated differently, a driver has engaged in an overt act with general intent and therefore has attempted to commit a crime—sufficient to render the would-be driver liable for driving under the influence.

24

with proof of driving, Section 66-8-102 authorizes prosecution for attempted DWI."[7]   *Id.*

Even if Defendant Colombe had argued that the legislature intended to allow the offense of attempt to commit misdemeanor driving under the influence pursuant to the "actual physical control" doctrine, the Court would not be persuaded, on the facts asserted by Plaintiffs, that Plaintiff Clema was in actual physical control of Bransford-Wakefield's vehicle.   This case therefore is distinguishable from *Sims*.

In *State v. Johnson*, the New Mexico Supreme Court held that "[a] person is in actual physical control over a vehicle when he or she exercises direct influence over the vehicle."   15 P.3d 1233, 1240 (N.M. 2000), *limited by Sims*, 236 P.3d 642.   The *Johnson* court explained, "[T]he clear purpose of the 'actual physical control' element of the DWI statute is to deter persons from placing themselves in a situation in which they can directly commence operating a vehicle while they are intoxicated, regardless of the location of the vehicle."   *Id.*   In *State v. Sims*, the Supreme Court of New Mexico revisited the definition of "actual physical control" enunciated in *Johnson*, and held that in addition to showing that the accused actually exercised control over the vehicle, the state must demonstrate that the defendant possessed a general intent to drive, so as to pose a real danger to the safety of the driver or the public.   *See Sims*, 236 P.3d at 650.   The *Sims* court explained, "It is no longer sufficient to introduce evidence that shows that the accused 'can directly commence operating a vehicle while . . . intoxicated.'"   *Id.* (quoting *Johnson*, 15 P.3d at

---

[7]     Section 66-8-102, the statute proscribing driving under the influence, provides that "[i]t is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state."   N.M. Stat. Ann. § 66–8–102(A).   The Motor Vehicle Code defines "driver" as every person who "drives" or is in "actual physical control of a motor vehicle."   *Id.* § 66-1-4.4(K); *Boone v. State*,   731 P.2d 366, 369 (1986) (holding that the Motor Vehicle Code's definition of "driver" applies to the offense of driving under the influence).

1240).

Both the original *Johnson* standard and the more recent *Sims* standard require a showing that the defendant would-be driver actually exercised control over the vehicle.[8]   There is no evidence that Plaintiff Clema exercised any actual control over Bransford-Wakefield's vehicle. Plaintiff Clema was the front seat passenger in the vehicle at the time Defendant Colombe stopped the vehicle.   Although, on the facts asserted by Plaintiffs, Clema asked Defendant Colombe if he could drive Bransford-Wakefield's vehicle and if Colombe would administer a sobriety test to confirm that Clema was not intoxicated so that he could drive the vehicle, these facts do not demonstrate that Clema exercised actual physical control over the vehicle.   To the contrary, the facts demonstrate that Clema had no actual physical control over the vehicle and that he was asking Defendant Colombe's permission to be given actual physical control over the vehicle. Therefore, even if Defendant Colombe had argued that he had probable cause to arrest Clema for misdemeanor attempt to commit driving under the influence pursuant to an "actual physical control" theory, the Court would not find his argument persuasive.

For the foregoing reasons, the Court concludes that the facts asserted by Plaintiffs do not suggest that a reasonable officer in Defendant Colombe's position would have had probable cause to believe that Clema exercised actual physical control over the vehicle.   Thus, the Court concludes that Plaintiff Clema has asserted facts that state a constitutional violation of his right to be free from arrest without probable cause for the crime of attempt to commit misdemeanor driving under the influence.   This showing satisfies the first prong of Plaintiff Clema's qualified

---

[8]     *Sims*, 236 P.3d at 650 (setting forth the *Johnson* and *Sims* standard and explaining that *Sims* adds an additional general intent requirement to the *Johnson* standard).

immunity burden with respect to his Section 1983 unlawful seizure claim premised upon his alleged attempt to commit the crime of driving while intoxicated.

      2.    <u>Concealing Identity</u>.

New Mexico law defines the offense of Concealing Identity as follows:  "Concealing identity consists of concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty or the exercise of his rights under the laws of the United States or of this state."  N.M. Stat. Ann. § 30-22-3.  Defendant Colombe contends that he is entitled to qualified immunity because he had probable cause to arrest Plaintiff Segura for this crime.   Plaintiff Segura argues that Colombe did not have probable cause to arrest him for Concealing Identity, because Colombe lacked reasonable suspicion that Segura committed a predicate, underlying crime.

To arrest a person for the crime of Concealing Identity, the Supreme Court of the United States has held that an officer must have reasonable suspicion that the person committed a predicate, underlying crime. *See Brown v. Texas*, 443 U.S. 47, 52 (1979) (observing that whatever purposes may be served by "demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it"); *Hiibel v. Sixth Judicial Dist. Ct.*, 542 U.S. 177, 184 (2004) (noting that "specific, objective facts establishing reasonable suspicion to believe the suspect was involved in criminal activity" is necessary to require identification) (citing *Brown*, 443 U.S. at 51-52); *see also Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008) ("Further, without probable cause that [the suspect] had committed the predicate, underlying crime . . . , [the] Officer . . . could not arrest her for concealing identity.") (citation omitted).  The Court already has

concluded that, on the facts asserted by Plaintiff Segura, Defendant Colombe did not have *probable cause* to arrest him for the offense of Parties to a Crime.   The Court now also holds that, on the facts alleged by Segura, Colombe did not have *reasonable suspicion* to suspect that Segura committed the offense of Parties to a Crime.

Reasonable suspicion is a less stringent standard than probable cause.   *See U.S. v. Sokolow*, 490 U.S. 1, 7 (1989) (explaining that the "level of suspicion required under [the reasonable suspicion standard] is obviously less demanding than that for probable cause") (citation omitted); *accord U.S. v. Rodriguez*, No. 12-2203, 2013 WL 6851128, at *3 (10th Cir. Dec. 31, 2013).   Whereas probable cause exists "'if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense,'" *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (quoting *Jones v. City & County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988)), reasonable suspicion requires only "articulable facts, together with rational inferences to be drawn therefrom, that criminal activity is afoot," *U.S. v. Harris*, 313 F.3d 1228, 1234 (10th Cir. 2002), *cert. denied*, 537 U.S. 1244 (2003).

Although the reasonable suspicion standard is less demanding than the probable cause standard, the Court holds that the same reasoning that compelled the Court to conclude that Plaintiffs had stated a constitutional violation by Defendant Colombe for arrest without probable cause for the offense of Parties to a Crime, likewise dictates that the Court conclude that Plaintiff Segura has asserted facts indicating that Colombe did not have reasonable suspicion to suspect that Segura had committed the offense of Parties to a Crime.   The Court already has held that Plaintiffs alleged no facts indicating that Plaintiffs helped, encouraged, or caused Bransford-Wakefield to commit the crime of driving under the influence.   As the Court explained, the evidence before the

28

Court—even that presented by Defendant Colombe—does not indicate that Plaintiffs helped obtain alcohol for Bransford-Wakefield, that they encouraged Bransford-Wakefield to consume alcohol, or that they otherwise caused Bransford-Wakefield to become intoxicated, and the New Mexico Court of Appeals has confirmed that in addition to being present during the commission of a crime, there must also be "some outward manifestation or expression of approval[] or shared purpose." *Marquez*, 238 P.3d at 883 (citation omitted).   Furthermore, the Court explained that although Plaintiff Segura admitted that Bransford-Wakefield had consumed alcohol, the facts alleged by Plaintiffs did not establish that Bransford-Wakefield was visibly impaired and that Plaintiff Segura was on notice that she was legally intoxicated.   *See supra* at 20-21.   These same facts support the Court's conclusion that Defendant Colombe did not have reasonable suspicion to believe that Plaintiff Segura was an accomplice to driving under the influence.

On the facts alleged, Defendant Colombe did not have reasonable suspicion to believe that Plaintiff Segura had engaged in the predicate offense of Parties to a Crime.   Reasonable suspicion of a predicate offense is a necessary element of the crime of Concealing Identity.   The facts before the Court do not establish that Defendant Colombe satisfied the reasonable suspicion standard. The Court therefore concludes that Plaintiff Segura has satisfied the first prong of his qualified immunity burden by alleging facts that state a constitutional violation for arrest without probable cause for the crime of Concealing Identity.[9]

---

[9]      Plaintiff Segura also argues that he has satisfied the first prong of his qualified immunity burden because he has asserted facts indicating that he did not conceal his identity.   Plaintiff Segura acknowledges that he identified himself to Colombe by the incorrect name and refused to provide his date of birth to Colombe, but argues that he did not conceal his identity because he initially provided Colombe with the correct name.   Although Segura subsequently provided Colombe with the incorrect name "Michael Smith" and identified his date of birth as "today," forty

B.      Clearly Established.

Because the Court has held that the facts alleged by Plaintiffs establish a constitutional violation for unlawful arrest, the Court must consider next whether Plaintiffs have satisfied the second part of the qualified immunity test by demonstrating that the right violated was clearly established.  *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).   "'[T]he right [Defendant is] alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right.'"   *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)).   The Tenth Circuit has held that for a right to be "particularized," there "ordinarily . . . must be a Supreme Court or Tenth Circuit opinion on point."   *Garramone v. Romo*, 94 F.3d 1446, 1451 (10th Cir. 1996).   That is not to say, however, that "the very action in question [must have] previously been held unlawful" for a plaintiff to defeat qualified immunity, *Anderson*, 483 U.S. at 640, but rather that in light of preexisting law, the unlawfulness was apparent.   The Court considers first whether Plaintiffs' right to be free from arrest without probable cause for Parties to a Crime was clearly established and next whether Plaintiff Segura's right to be free from arrest without probable cause for Concealing Identity was clearly established.

---

seconds later he again identified himself by his correct name.  The Court notes that Defendant Colombe's arrest of Plaintiff Segura occurred after Segura refused to provide his date of birth and gave Segura the different name "Smith," and that probable cause is determined at the time of the arrest, *see Titus v. Ahlm*, No. 07-2213, 2008 WL 4726233, at *3 (10th Cir. Oct. 28, 2008) (citation omitted), and not based upon facts occurring after the arrest, even if the subsequent facts occurred only forty seconds thereafter.  The Court, however, declines to decide the question whether, on the facts asserted, Plaintiff Segura withheld his identity, because the Court holds that Segura has stated a constitutional violation on the independent ground that Colombe lacked reasonable suspicion that Segura had committed a predicate, underlying crime.

1.      Parties to a Crime.

The Court already has concluded that Plaintiffs have satisfied the first prong of their qualified immunity burden.   Specifically, the Court has held that (1) Plaintiffs Segura and Clema have asserted facts demonstrating that a reasonable officer in Defendant Colombe's position would not have had probable cause to believe that they had committed the crime of aiding and abetting driving under the influence, and (2) Plaintiff Clema has asserted facts demonstrating that a reasonable officer in Colombe's position would not have had probable cause to believe that he had committed the crime of attempt to drive under the influence.   The Court next must determine whether the right to be free from both of these constitutional violations was clearly established at the time of Plaintiffs' arrests.

With respect to the crime of aiding and abetting driving under the influence, the Court held that Plaintiffs stated a constitutional violation for unlawful arrest, because the facts before the Court did not establish that a reasonable officer in Defendant Colombe's position would have had probable cause to believe that Plaintiffs helped, encouraged, or caused the commission of the crime of driving under the influence.   It is well established that a warrantless arrest is permissible under the Fourth Amendment only if there is probable cause to believe that the arrestee committed a crime.   *See Romero*, 45 F.3d at 1476.   The probable cause requirement for warrantless arrests was clearly established at the time of Plaintiffs' arrests in 2009.   *See id.* (holding in 1995 that, under the probable cause standard, a "police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime") (citation omitted); *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (holding in 1985 that a police officer may arrest a person "if he has probable cause to believe that person committed a crime").   It also was clear in 2009 that "'[p]robable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or

31

she has reasonably trustworthy information are sufficient to lead a prudent person to believe that

the arrestee has committed or is committing an offense,'" *Romero*, 45 F.3d at 1476 (quoting *v. City*

*& County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988)), and that determining whether a crime

has been committed requires an examination of the elements of the particular offense, *see id.*;

*Walker v. McLellan*, No. 94-1494, 1995 WL 238329, at *2 (10th Cir. Apr. 21), *cert. denied*, 516

U.S. 990 (1995).   Prior to Plaintiffs' arrest, the New Mexico Court of Appeals held that the terms

"aids or abets" in Section 66-8-120, Parties to a Crime, with reference to the New Mexico Criminal

Code's definitions of accessory liability and the case law interpreting those definitions.   *See*

*Marquez*, 238 P.3d at 883-84.   The New Mexico Supreme Court confirmed in 1997 that accessory

liability requires a finding that a defendant helped, encouraged, or caused the principal's crime to

be committed.   *See State v. Carrasco*, 946 P.2d 1075, 1079 (N.M. 1997) (citing N.M. Rules Ann.,

U.J.I. 14-2822).   Based upon the foregoing law, the Court concludes that the right to be free from

unlawful arrest for Parties to a Crime was clearly established.   *Cf. Pearson*, 555 U.S. at 232, 236.

The Court likewise concludes that the law regarding arrest without probable cause for the

crime of attempt to commit driving under the influence was clearly established on July 10, 2009,

such that a reasonable officer in Defendant Colombe's position would have understood that

arresting Plaintiff Clema for attempt to commit a felony without any evidence that Clema had

committed a felony, or arresting Clema for attempt to commit a misdemeanor under an "actual

physical control" theory without any evidence that Clema possessed any control over the vehicle,

violates Clema's constitutional rights.   At the time of Clema's arrest for attempt to drive under the

influence, it was clear that a warrantless arrest requires probable cause, *see Romero*, 45 F.3d at

1476, that the determination whether probable cause exists is made with reference to the

substantive elements of the offense, *see id.*; *Walker*, 1995 WL 238329, at *2, and that the crime of

attempt is limited to attempt to commit a felony unless otherwise provided for by statute, *see* N.M. Stat. Ann. § 30-28-1 (1978); *City of Albuquerque v. Chavez*, 577 P.2d 457 (N.M. Ct. App.), *cert. denied*, 577 P.2d 1256 (1978).   It also was clear on July 10, 2009, that to be charged with misdemeanor driving under the influence under an "actual physical control" theory, a defendant must have been in actual physical control over a vehicle.   *See State v. Johnson*, 15 P.3d 1233, 1240 (N.M. 2000), *limited by State v. Sims*, 236 P.3d 642, 650 (N.M. 2010).[10]   By virtue of this law in effect at the time of Clema's arrest, the Court concludes that Clema's right to be free from arrest for attempted driving under the influence without probable cause was clearly established in a more particularized and relevant sense, and that the contours of the right were sufficiently clear, so that a reasonable officer in Defendant Colombe's position would have understood that his conduct violated Clema's constitutional right.   *Cf. Saucier*, 533 U.S. at 201-02 (citation omitted). Because Plaintiffs Segura and Clema have satisfied both prongs of their qualified immunity burden, the Court concludes that, with respect to Plaintiffs' individual capacity Section 1983 claims for unlawful arrest for Parties to a Crime, Defendant Colombe is not entitled to judgment in his favor as a matter of law on the ground of qualified immunity.

    2. <u>Concealing Identity</u>.

    With respect to Plaintiff Segura's arrest for the crime of Concealing Identity, the Court

---

[10]  At the time of the arrest, the Supreme Court of New Mexico had not yet decided *State v. Sims*, 236 P.3d 642, 650 (N.M. 2010), which modified the definition of "actual physical control" set forth in *State v. Johnson*, 15 P.3d at 1240.   Thus, for the purposes of determining whether the right Plaintiffs alleged was violated was clearly established at the time of their arrest, the Court applies the standard set forth in *Johnson*.   In any event, the subsequent holding by the Supreme Court in *Sims* did not alter the *Johnson* requirement that the accused actually exercised control over the vehicle, but rather only added the additional requirement that the state demonstrate that the defendant possessed a general intent to drive, so as to pose a real danger to the safety of the driver or the public.   *See Sims*, 236 P.3d at 650.

already has concluded that Segura had satisfied the first prong of his qualified immunity burden by asserting facts that, if true, demonstrate that a reasonable officer in Defendant Colombe's position would not have had probable cause to believe that Segura had committed the crime of Concealing Identity.  The Court next must determine whether the right to be free from this constitutional violation was clearly established at the time of Segura's arrest.

On July 10, 2009, it was well settled that an officer must have reasonable suspicion that a person committed a predicate, underlying crime to arrest a person for the crime of Concealing Identity.  In 1979, the Supreme Court of the United States determined that the guarantees of the Fourth Amendment do not allow an officer to demand identification from an individual without any specific basis for believing the person is involved in criminal activity.  *See Brown v. Texas*, 443 U.S. 47, 52 (1979).  In 2004, the Supreme Court reiterated that "specific, objective facts establishing reasonable suspicion to believe the suspect was involved in criminal activity" is necessary to require identification.  *Hiibel v. Sixth Judicial Dist. Ct.*, 542 U.S. 177, 184 (2004) (citing *Brown*, 443 U.S. at 51-52); *see also Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008) ("Further, without probable cause that [the suspect] had committed the predicate, underlying crime . . . , [the] Officer . . . could not arrest her for concealing identity.") (citation omitted).  Under this clearly established law in effect at the time of Plaintiffs' arrests, Defendant Colombe was required to have reasonable suspicion that Plaintiff Segura committed the underlying predicate offense of Parties to a Crime prior to arresting him for the crime of Concealing Identity.

The Court concludes that Plaintiff Segura's right to be free from unlawful arrest for attempted driving under the influence was clearly established in a more particularized and relevant sense, and that the contours of the right were sufficiently clear on July 10, 2009.  The court further

34

holds that, pursuant to this clearly established law, a reasonable officer in Defendant Colombe's position would have understood that he violated Segura's constitutional rights when he arrested Segura for the crime of Concealing Identity without reasonable suspicion that Segura was involved in a predicate crime.  *Cf. Saucier*, 533 U.S. at 201-02 (citation omitted).  Because Plaintiff Segura has satisfied both prongs of his qualified immunity burden with respect to his individual capacity Section 1983 claim for unlawful arrest for Concealing Identity, the Court concludes that Defendant Colombe is not entitled to judgment in his favor as a matter of law on the ground of qualified immunity.

## CONCLUSION

For the foregoing reasons, IT IS THEREFORE ORDERED that Defendant Paul Colombe's Motion for Summary Judgment [Doc. 71] is DENIED.


DATED this 24th day of March, 2014.


_____
MARTHA VAZQUEZ
United States District Court Judge