## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOHN CLEMA,

        Plaintiff,

   vs.

PAUL COLOMBE, *et al.*,

        Defendants.

No. 11-CV-0807-MV-WPL

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff John Clema's Motion to Reconsider the Court's Orders Documents ##58 [sic] & 108 and to Reinstate Plaintiff's Seventh Cause of Action, the Motion for Summary Judgment of Plaintiff John Clema [Doc. 118], Plaintiff's Motion *in Limine* to Limit the Testimony of Damon Fay [Doc. 120], Defendant Colombe's Motion for Partial Summary Judgment on Counts II and II of the First Amended Complaint for Damages and Equitable Relief [Doc. 121], and Defendant Colombe's Motion for Partial Summary Judgment on Qualified Immunity Grounds as to Count I of the First Amended Complaint for Damages and Equitable Relief [Doc. 125]. The Court, having considered the Motions, briefs, relevant law, attached exhibits, and being otherwise fully informed, finds that Defendant Colombe's Motions for Summary Judgment [Docs. 121, 125] are well-taken and therefore will be **GRANTED** and that all other pending motions are not-well taken and will be **DENIED.**

**BACKGROUND**

In light of the complicated procedural history and cross-motions before the Court, the Court will cabin its factual analysis to those portions of the narrative that the Court believes are dispositive in this case. At approximately 11:00 p.m. on July 10, 2009, Officer Colombe initiated a traffic stop of a vehicle in which Plaintiff Clema was a passenger. Defendant's Statement of Undisputed Material Facts ("DSUMF") ¶ 1. *See also* Plaintiff's Statement of Undisputed Material Facts ("PSUMF") ¶ 1. After detecting the "odor of alcoholic [sic] beverage" emanating from the driver, the officer ordered the driver to exit the vehicle and submit to a field sobriety test. PSUMF ¶ 2; DSUMF ¶ 2. At the conclusion- of this field sobriety test, Defendant "arrested the driver for Driving Under the Influence ('DUI') of alcohol." DSUMF ¶ 2. After arresting the driver, Officer Colombe returned to the vehicle and "informed the passengers that he had arrested the driver and asked if they could call someone to pick them up from the scene." *Id.* ¶ 4.

At this point, Plaintiff asked Officer Colombe if the officer could "check [Clema] to see whether he (Clema) was sober." *Id.* ¶ 5. Defendant attempted to respond that he could tell "by [Clema's] slurred speech right now," that Clema was intoxicated, "but Clema interjected" that "If you don't—if you don't, then I think--." *Id.* ¶ 6. Apparently, Plaintiff then tried to exit the car because "Officer Colombe can be heard on videotape cautioning Clema to stay in the vehicle." *Id.* ¶ 7. Clema then "asked Officer Colombe a second time whether Officer Colombe could check to see if he (Clema) was sober." *Id.* ¶ 8. After this second request, "Officer Colombe told

Clema that he could administer a preliminary field test to him right then if that is what Clema would like." *Id.* ¶ 9.  In response, "Clema began to advise Officer Colombe what would happen in a court of law if Officer Colombe refused to give him a breathalyzer test." *Id.* ¶ 10.

During this conversation, Plaintiff had, evidently, attempted to touch the flashlight in Officer Colombe's hand, which caused Officer Colombe to react by raising "his right hand up from the position where he had been holding it near his lower chin and extended it in one swift motion so that his hand was over his head." *Id.* ¶¶ 12-13.  Clema protested "well, don't put it in my lights-- in my--," but Officer Colombe explained that "he was shining a flashlight into the vehicle for his own safety and asked Clema to cooperate." *Id.* ¶¶ 15-16.  Clema retorted "are you cooperating with a citizen?" *Id.* ¶ 18.  Defendant Colombe "attempted to respond," but Plaintiff interjected that he "was happy to drive home." *Id.* ¶ 19.  Officer Colombe then explained that he would not permit Clema to drive the vehicle home, presumably because the officer believed Clema to be intoxicated. *Id.* ¶ 20.

Clema's behavior then became increasingly belligerent and erratic.  He "began to ask the other passenger whether he was following the conversation" and shouted over Officer Colombe to say that "the officer just continues to wish to speak to me with his lights in the eye. Okay. That's..." *Id.* ¶ 21. At this point, Officer Colombe opened the vehicle door, "interrupted Clema and asked him to step outside the vehicle and advised that he would be placed under arrest for parties to a crime." *Id.* ¶ 22.

3

The following day, on July 11, 2009, "Officer Colombe filled out a criminal complaint form (the 'Complaint') against Clema for filing with the Magistrate Court for the County and stated in the Complaint that he had arrested Clema for parties to a crime." *Id.* ¶ 23. In this Complaint, Colombe noted "that he would be closing the case and sending the Complaint, Supplemental Report and the Santa Fe Detention Arrest/Booking Sheet to the County District Attorney's Office for review." *Id.* ¶ 24. Evidently, the case against Clema was not prosecuted. The facts before the Court do not make entirely clear what happened. At his deposition, Officer Colombe explained that "Clema's criminal case would have gone to the Magistrate Court as a misdemeanor offense, but that [Colombe] never received a subpoena to appear before the Court and did not prosecute the case or attend a hearing on it, and would typically assume when that happened that the defendant had reached a plea bargain" with the District Attorney. *Id.* ¶ 25.

## DISCUSSION

### I.   Motion for Reconsideration Standard

Although the Federal Rules of Civil Procedure do not expressly provide for a "motion to reconsider," it is well-established in this circuit that such motions are interpreted as requests for an amendment to or relief from judgment pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), respectively, or as an invocation of the district court's inherent "discretion to revise interlocutory orders before the entry of a final judgment." *Wagner Equip. Co. v. Wood*, 289 F.R.D. 347, 349 `(D.N.M. 2013). Consequently, a "district court has considerable discretion in ruling

4

on a motion to reconsider." *Anderson Living Tr. v. WPX Energy Prod., LLC*, 308 F.R.D. 410, 427 (D.N.M. 2015) (citing *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir.1997)).

It is firmly-established that the "[g]rounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). *See also Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1212 (10th Cir. 2012) (employing the *Servants of Paraclete* standard). "'Thus,'" as courts in this circuit have emphasized repeatedly, "'a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.'" *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1218 (D.N.M. 2014) (quoting *Servants of Paraclete*, 204 F.3d at 1012). It is therefore inappropriate for a litigant to seek to "reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Servants of Paraclete*, 204 F.3d at 1012. Plaintiff fails to meet this burden here.

## II.    Plaintiff's Request for Reconsideration

Stated succinctly, Plaintiff Clema asks that this Court reconsider two of its prior decisions and "reinstate Plaintiff's Seventh Cause of Action" in light of a recent opinion issued by the New Mexico Supreme Court. *See* Doc. 115 at 1. As listed in Plaintiff's First Amended Complaint, his Seventh Cause of Action was a

"Claim against Sheriff Robert A. Garcia for Supervisory Liability Under 42 U.S.C. § 1983." Doc. 51 at 10. This was the sole claim for supervisory liability in Plaintiff's First Amended Complaint and the only cause of action at issue in the Court's Memorandum Opinion and Order granting Sheriff Garcia's Motion for Summary Judgment [Doc. 108]. While Plaintiff also requests reconsideration of a prior Memorandum Opinion and Order [Doc. 58], he does so only insofar as it establishes a rule of decision in this case that Clema argues has subsequently been altered by the New Mexico Supreme Court.

In deciding that Sheriff Garcia was entitled to judgment as a matter of law, this Court explained that to "establish municipal liability, a plaintiff must demonstrate that (1) an officer committed an underlying constitutional violation, (2) a municipal policy or custom exists, and (3) there is a direct causal link between the policy or custom and the injury alleged." Doc. 108 at 10. The Court continued that Plaintiff's official capacity claim could not survive summary judgment because he "identifie[d] no official policy" that caused his alleged injuries and, further, had not offered sufficient evidence to establish that the County of Santa Fe acted with deliberate indifference, as would "sustain an official capacity Section 1983 claim." *Id.* at 6, 10-13. Now, on reconsideration, Plaintiff insists that he "has obtained additional evidence of the County's deliberate indifference in failing to supervise and train Defendant Colombe and other Tribal Officers from the deposition of Defendant Colombe." Doc. 115 at 6. Plaintiff's proffer is unavailing. First, nowhere in his brief does Plaintiff argue that this "additional evidence" is "new evidence

previously unavailable" to him, nor does he explain why the testimony of Defendant Colombe would have been "unavailable" to him when he responded to Defendant Garcia's Motion for Summary Judgment.  *Servants of Paraclete*, 204 F.3d at 1012.

Indeed, as was amply explained by Magistrate Judge Scott in his Order Granting Defendant's Motion for Stay of Discovery [Doc. 45], Clema had an opportunity to obtain discovery from Defendant Colombe on issues of qualified immunity until February 1, 2012, more than **two-and-a-half years** before August 27, 2014, when Defendant Garcia filed his Motion for Summary Judgment.  *See generally* Docs. 45, 88.  The fact that Plaintiff did not avail himself of available discovery earlier in this case and did not engage in an independent investigation simply does not make evidence "unavailable" to him.  For this reason alone, the Court must deny Plaintiff's Motion for Reconsideration and will not "reinstate" his Section 1983 claim for municipal liability.

Moreover, it appears that much of the motivation for Plaintiff's Motion to Reconsider is to bring to the attention of the Court the New Mexico Supreme Court's decision in *Loya v. Gutierrez*, 350 P.3d 1155 (N.M. 2015).  There, the court held that Santa Fe county was "obligated to defend and potentially indemnify" a cross-deputized tribal police officer.  *Loya*, 350 P.3d at 1159, 1164.  In doing so, it held that, for the purposes of the New Mexico Tort Claims Act, a cross-commissioned tribal police officer, when enforcing state or county law, and therefore "acting on behalf or in service of a governmental entity in any official capacity," may be considered a "public employee."  *Id*. at 1164.  However, as Defendant Garcia

7

notes in his Response, this Court issued its decision on the premise that Colombe was an employee of the County of Santa Fe. *See* Doc. 108 at 6; Doc. 133 at 2-3. Consequently, the "new" rule announced in *Loya* does not actually change the law as applied by this Court in this case, such that *Loya* does not require this Court to revisit its prior decision.

Further, to the extent that Clema argues that *Loya* "held that the County had the responsibility to supervise and train deputized Tribal Officers, such as Defendant Colombe," he grossly mischaracterizes the reasoning of the court. Doc 115 at 1. *See also* Doc. 135 at 2. While *Loya* does state that "[i]n the case of a sworn sheriff's deputy engaged in enforcing state law on behalf of the county, there is a clear right to control—indeed an obligation to control—the actions of a deputy," this phrase comes as a justification for holding that the tribal officer in that case was not an independent contractor and therefore was entitled to legal defense from the county. *Id.* at 1169. This lone phrase, included at the end of an opinion that did not hinge on the county's purported duty to supervise tribal officers, can hardly be read as broadly as Plaintiff asks. Therefore, the Court finds that reconsideration of its prior decision in this case would be inappropriate.

## III.    Plaintiff's "Cause of Action" for Punitive Damages

Plaintiff's "claim" for punitive damages will be dismissed *sua sponte*. Punitive damages, as their name indicates, are a form of relief, not an independent cause of action. *See, e.g.*, *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1554 (10th Cir. 1991) ("A punitive damage claim is not an independent cause of action or issue

separate from the balance of a plaintiff's case.  It is part and parcel of a liability

determination."); *Howell Petroleum Corp. v. Leben Oil Corp.*, 976 F.2d 614, 622

(10th Cir. 1992) ("A request for damages, however, does not constitute a cause of

action; rather damages are a remedy for a legal wrong.").  Consequently, the Court

will dismiss this "cause of action" as a separate count in this suit.  Whether Plaintiff

may demonstrate that punitive damages are appropriate on a separate cause of

action is a distinct question that will be determined below.

## IV.     Cross-Motions for Summary Judgment

Federal Rule of Civil Procedure 56 directs the Court to enter summary

judgment if "the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  The Court's analysis is no less stringent where, as here, the parties file cross-

motions for summary judgment.  *See Hospice of New Mexico, LLC v. Sebelius*, 691 F.

Supp. 2d 1275, 1286 (D.N.M. 2010) (explaining that "cross-motions for summary

judgment do not automatically empower the court to dispense with the

determination whether questions of material fact exist. They require no less careful

scrutiny than an individual motion.") (internal quotation marks omitted).  Even so,

when faced with cross-motions for summary judgment, the Court is "entitled to

assume that no evidence needs to be considered other than that filed by the

parties."  *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d

1316, 1319 (10th Cir. 1997) (citation omitted).  Further, "[t]o the extent the cross-

motions overlap," the Court is permitted to "address the [parties'] legal arguments together." *Berges v. Std. Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010).

However, the standard on a motion for summary judgment shifts significantly where, as here, the defendants invoke the protection of qualified immunity. *See Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000). In such instances, the plaintiff bears the "heavy two-part burden" of establishing that "the defendant's actions violated a [federal] constitutional or statutory right" and that the right in question "was clearly established at the time of the defendant's unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (internal quotation marks omitted). Of course, it is now settled law that the Court may elect "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If the plaintiff meets its burden under this framework, the Court then proceeds with its ordinary summary judgment analysis and the burden reverts to the defendant to demonstrate that no genuine issue of material fact exists that would defeat its claim for qualified immunity. *See, e.g.*, *Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992) (citations omitted), *cert. denied*, 509 U.S. 923 (1993).

## V.    New Mexico Tort Claims Act

Plaintiff's Second, Third, and half of his Fourth "Cause[s] of Action" appear to rely on New Mexico's Tort Claims Act ("NMTCA"), rather than any other provision of state or federal law. Doc. 51 ¶¶ 22-29. The NTMCA, in turn, provides that "any

public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom Restoration Act" and any relevant provision of the NMTCA.  N.M.S.A. 1978 § 41-4-4(A).  The last of these enumerated lacunae in immunity is found in § 41-4-12, which states that NMTCA immunity "does not apply to liability for [various torts], deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by ***law enforcement officers*** while acting within the scope of their duties."  N.M.S.A. 1978 § 41-4-12 (emphasis added).

Straightforward application of the operative definitions in this case reveals that Defendant Colombe is immune from liability under the NMTCA.  First, as Defendant concedes, "the New Mexico Supreme Court has determined that Defendant is a public employee under" the NMTCA.  Doc. 128 at 3.  This comports with the assumption that governed the Court's previous decision; there, the Court noted that "Garcia, for purposes of his motion, assumes that cross-commissioning Colombe as a Santa Fe County deputy sheriff was the equivalent of hiring Colombe as an employee."  Doc. 108 at 6.

Moreover, the New Mexico Supreme Court decision in *Loya* leaves no doubt that cross-commissioned tribal police officers like Colombe, while perhaps "public employees," are not "law enforcement officers" for the purposes of the NMTCA.  *See Loya*, 350 P.3d at 1160 (explaining that the officer "is not a 'law enforcement officer' as defined under the NMTCA because he is not a 'full-time salaried public employee'

11

of the County"). Consequently, the "law enforcement officer" exception to immunity does not apply in the instant case and the only remaining issue is whether Colombe acted within the scope of his duties when he committed the alleged torts. *See* N.M.S.A. § 41-4-4 (providing immunity for "any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived").

Plainly, Officer Colombe acted within the scope of his duties as a public employee. The Court recognizes that the determination as to "'[w]hether an employee is acting within the scope of duties is a question of fact, and summary judgment is not appropriate unless only one reasonable conclusion can be drawn from the facts presented.'" *Salazar v. City of Albuquerque*, 776 F. Supp. 2d 1217, 1245 (D.N.M. 2011) (quoting *Celaya v. Hall*, 85 P.3d 239, 246 (N.M. 2004)). However, the facts here admit of only one reasonable conclusion.

For the purposes of the NMTCA, "scope of duty" is defined as "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." N.M.S.A. § 41-4-3-(G). On face, it appears that executing a traffic stop and attendant arrests is squarely within the set of actions that Officer Colombe was "authorized to perform by the governmental entity." Moreover, even if Defendant Colombe were ***not*** authorized to conduct traffic stops and arrests, he would ***still*** be immune from prosecution. This analysis has been refined into a "four-part test" used by New Mexico courts "to determine whether an employee's acts were performed within the

12

scope of employment." *Estate of Anderson v. Denny's Inc.*, 987 F. Supp. 2d 1113, 1144 (D.N.M. 2013).  This test states that an "employee's action, although unauthorized," nonetheless falls within the "scope of employment if the action (1) is the kind the employee is employed to perform; (2) occurs during a period reasonably connected to the authorized employment period; (3) occurs in an area reasonably close to the authorized area; and (4) is actuated, at least in part, by a purpose to serve the employer." *Id.*  (citing *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 168 P.3d 155, 160 (N.M. Ct. App. 2007)).  Each of these four elements is met here.

First, there can be no doubt that the conduct at issue is of "the kind the employee [was] employed to perform."  As has been repeated extensively throughout this case, Defendant Colombe was cross-commissioned by Santa Fe County, in part to make the precise sort of traffic stop that forms the core of this suit.

Second, the alleged torts at issue occurred squarely within the period of employment.  At the time of the stop, Defendant Colombe was both on duty with the Tesuque Police Department and deputized by Santa Fe County.  Doc. 51 ¶ 2; Doc. 88-1 ¶ 4.  Thus, the conduct at issue plainly "occurred during a period reasonably connected to the authorized employment period."

Third, the arrest occurred within the geographic boundaries of the Tesuque Pueblo, which is entirely circumscribed by Santa Fe County.  *See* Doc. 42 ¶ 1.  Hence, the alleged torts all occurred within the area in which Officer Colombe was authorized to act either as a tribal police officer or a deputy sheriff.

13

Fourth and finally, Officer Colombe undoubtedly acted for the benefit of Santa Fe County.  There is simply no suggestion anywhere in the facts of this case that Officer Colombe stood to benefit personally from this arrest or that he was motivated by anything other than his obligation to enforce the applicable traffic laws.  Absent any indication to the contrary, the Court finds that Officer Colombe's conduct was motivated by and directed at serving Santa Fe County.  On this analysis, it is readily apparent both that Plaintiff's feigned ignorance regarding the "scope of [Officer Colombe's] authority" is irrelevant and that Plaintiff's emphasis on the fact that the Santa Fe County Sheriff "supervise[d] Officer Colombe or assign[ed] his work or control[ed] the manner and means of his performance as a law enforcement officer" has no bearing on the test articulated by the New Mexico Supreme Court.  *See* Doc. 128 at 1 (internal quotation marks omitted).

While Plaintiff reasons that it "would be an odd result that false imprisonment and malicious abuse of process would be considered conduct within the scope of a public employee's employment," this logic obviously and willfully misconstrues the meaning and purpose of the statute.  Indeed, the only instances in which the NMTCA is invoked are when an employee is accused of improper conduct; to suggest that any allegedly tortious conduct is outside the scope of the statute is flatly nonsensical and would demand reading the exception in such a way as to swallow the rule.  *See Salazar*, 776 F. Supp. 2d at 1245 ("the Supreme Court of New Mexico rejected a plaintiff's argument that unlawful acts fall outside of an employee' s duties, because this interpretation would swallow the rule.").

14

Further, Plaintiff's observation that it "would also be an odd result if tribal police officers were given more immunity from suit than any other law enforcement officers under the NMTCA" is absurd.  First, the mere fact that the decision in *Loya* may yield unintended consequences when applied to other provisions within the same statute does not mean that this Court must ignore the plain meaning of the text.  That is, in the Court's estimation, it would be ***yet more*** peculiar to hold that cross-deputized tribal police officers are not "law enforcement officers" for one section of the NMTCA, but, somehow, should be considered "law enforcement officers" for a different section of the same statute that shares the same definition.

Second, as *Loya* itself recognized, cross-deputized tribal officers are ***not*** "law enforcement officers" and are only considered public employees in certain circumstances.  It is entirely reasonable that tribal officers would be entitled to legal defense from the county, but not subject to NMTCA liability, given that potential plaintiffs may seek redress through Section 1983 suits.  Alternatively, this result may be viewed as a species of compromise, given that the County enjoys the benefit of additional law enforcement officers without bearing the burden of paying their salaries, contributing to their pensions, and so forth.  On this understanding, immunity under the NMTCA should be considered a part of the bargain between the Tesuque Pueblo and the County of Santa Fe, without which the Tesuque Pueblo would have no reason to loan the labor of its officers; doing so would merely expose them to lawsuits without any obvious benefit to the Pueblo.  Absent some clear

indication to the contrary, the Court will not endorse such a strained and counterintuitive reading of the NMTCA.

## VI.   Plaintiff's Section 1983 Claims

a. *False Arrest Against Officer Colombe*

Plaintiff's Section 1983 claim for wrongful arrest must fail.  Officers are immune from any suit arising from an allegedly unlawful arrest if there was "arguable probable cause" to arrest the plaintiff.  *See, e.g.*, *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) ("In the context of a qualified immunity defense on an unlawful search or arrest claim, we ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct.") (internal quotation marks omitted).  There can be no doubt that under this standard, Defendant Colombe is immune from suit.

New Mexico state law states that "[e]very person who commits, attempts to commit, conspires to commit or aids or abets in the commission of any act declared herein to be a crime" and "every person who falsely, fraudulently, forcibly or willfully induces, causes, coerces, requires, permits or directs another to violate any provision of the Motor Vehicle Code or any other law of this state pertaining to motor vehicles is likewise guilty of such offense."  N.M.S.A. § 66-8-120.  Here, the facts make clear that Plaintiff was a passenger in the vehicle operated by a driver arrested for operating a motor vehicle under the influence of alcohol.  Moreover, Plaintiff acted in a manner that led Officer Colombe to believe that Clema had also consumed alcohol.  From these facts, it is eminently reasonable to infer that

16

Defendant permitted the driver to, or aided and abetted her in, driving under the influence of alcohol. Such facts are more than sufficient to furnish "arguable probable cause" for the arrest. For this reason alone Defendant is entitled to judgment as a matter of law.

Moreover, Plaintiff appears to assume, contrary to well-established authority, that the sole offense upon which Defendant may seek to ground a claim of qualified immunity is the offense for which the officer stated that he arrested the Plaintiff. *See* Doc. 129 at 5 ("Defendant Colombe confirmed on the video and in his testimony that he arrested Clema only for Parties to a Crime DWI, and that is the only charge and arrest that is at issue in this case."). This argument profoundly misapprehends the applicable law. *See, e.g.*, *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (explaining that an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."); *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006) ("All that matters is whether [the officer] possessed knowledge of evidence that would provide probable cause to arrest her on *some* ground.) (emphasis original); *United States v. Turner*, 553 F.3d 1337, 1345 (10th Cir. 2009) ("the probable cause inquiry is not restricted to a particular offense, but rather requires merely that the officer had reason to believe that a crime—any crime—occurred."). Thus, there can be no liability if the facts available to the officer furnished arguable probable cause to believe that Clema had committed *any crime* for which he could be arrested.

At least one such possibility is readily apparent.  New Mexico state law defines "assault on a peace officer" as *either* "an attempt to commit a battery upon the person of a peace officer while he is in the lawful discharge of his duties" *or* "any unlawful act, threat or menacing conduct which causes a peace officer while he is in the lawful discharge of his duties to reasonably believe that he is in danger of receiving an immediate battery." N.M.S.A. § 30-22-21.  "Battery," in turn, is defined as "the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner."  N.M.S.A. § 30-3-4.  The undisputed facts of the instant case furnish "arguable probable cause" for Officer Colombe to have arrested Clema.  Put simply, it is not disputed that Clema reached for Officer Colombe's flashlight, which induced the officer to recoil and draw the flashlight away from Plaintiff.  Similarly, the undisputed facts regarding Clema's behavior indicate that he was obstreperous, contemptuous, and unruly.  Finally, at the time, the flashlight was effectively part of the officer's person, such that there is no doubt that Colombe had "arguable probable cause" to believe that Clema *attempted* to "touch or apply force to the person of another" in a "rude, insolent, or angry manner." *See* N.M.S.A. § 30-3-4.  In the Court's view, these facts furnished Officer Colombe with probable cause to arrest Plaintiff.  Thus, Defendant Colombe is entitled to judgment as a matter of law on Plaintiff's "false arrest" claim.

b. *False Imprisonment Against Officer Colombe*

"The Tenth Circuit has explained that a plaintiff alleging that the government has unconstitutionally imprisoned him has at least two potential

constitutional claims:  The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause.'"  *Chavez v. Cty of Bernalillo*, 3 F. Supp. 3d 936, 980 (D.N.M. 2014) (internal quotation marks omitted).  *See also, Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) ("If he has been imprisoned without legal process he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment.").  However, the "Tenth Circuit has explained that a false arrest or imprisonment claim is appropriate when a person has been imprisoned without legal process." *Chavez*, 3 F. Supp. 3d at 982.  That is, the "claim arises under the Fourth Amendment after an unlawful arrest and before the institution of legal process."  *Id.*

In the instant case, Plaintiff plainly cannot prevail on his false imprisonment claim.  As discussed above, the Court believes that Officer Colombe's arrest of Plaintiff was lawful and therefore cannot form the basis for a false imprisonment claim.  Similarly, Officer Colombe initiated a complaint against Plaintiff, such that any post-arrest detention appears to be based on adequate process.

c. *Malicious Prosecution Against Officer Colombe*

"To establish a malicious-prosecution claim under § 1983, a plaintiff must prove that the defendant initiated or continued a proceeding against him without probable cause." *Mata v. Anderson*, 685 F. Supp. 2d 1223, 1249 (D.N.M. 2010).  *See also Becker v. Kroll*, 494 F.3d 904, 913–14 (10th Cir. 2007).  "Under Tenth Circuit case law, a § 1983 malicious prosecution claim includes the following elements:

(i) the defendant caused the plaintiff's continued confinement or prosecution; (ii) the original action terminated in favor of the plaintiff; (iii) no probable cause supported the original arrest, continued confinement, or prosecution; (iv) the defendant acted with malice; and (v) the plaintiff sustained damages." *Mata*, 685 F. Supp. 2d at 1249.

Here, Plaintiff's claim fails at the second, third and fourth elements.  First, Plaintiff has not met his burden of demonstrating that the prosecution terminated in his favor.  *See Wilkins v. DeReyes*, 528 F.3d 790, 803 (10th Cir. 2008) ("The plaintiff has the burden of proving a favorable termination.") (internal quotation marks omitted).  While the matter was dismissed, this appears to be the result of the fact that Officer Colombe was not notified of the hearing and therefore did not appear in Court; such a default judgment is insufficient under Tenth Circuit precedent to meet the second element of a malicious prosecution claim.  *See id.* at 803 (the "dispositive inquiry is whether the failure to proceed implies a lack of reasonable grounds for the prosecution.")  (internal quotation marks omitted).  Second, as discussed above, the Court believes that the original arrest and subsequent detention were justified by probable cause, not merely "arguable" probable cause, such that the third element cannot be met.   Third, and finally, nowhere in the facts described by the parties, even viewed in the light most favorable to Plaintiff, does the Court perceive any malice whatsoever in Officer Colombe's conduct.  Thus, Defendant Colombe is entitled to judgment as a matter of law on this claim.

d. *Substantive Due Process Against Officer Colombe*

The Court understands Plaintiff's allegations in paragraph 19 of his Complaint regarding the deprivation of "his constitutional right to substantive due process under the United States Constitution" as merely restating or clarifying his earlier claims, particularly in view of the fact that where specific constitutional provisions provide plaintiffs with a right, the Supreme Court discourages predicating liability on Substantive Due Process. *See United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). This reading is reinforced by the fact that Plaintiff did not respond to Defendant Colombe's argument regarding Substantive Due Process, including the portion in which Defendant notes that "it is not entirely clear if Clema is alleging a malicious prosecution claim under the Fourth Amendment or the Due Process Clause (Fourteenth Amendment) or possibly both, as alternative theories." Doc. 125 at 4-5. Whatever the case, the Court fails to perceive any basis for liability predicated on Substantive Due Process that is not encompassed by the claims dismissed above.

## VII.    Equitable Expungement of Criminal Records

The Court will decline to expunge Plaintiff Clema's criminal record. The Tenth Circuit has explained that "an arrest record may be expunged after dismissal of the charges or acquittal" only "in extreme circumstances." *United States v. Pinto*,

1 F.3d 1069, 1070 (10th Cir. 1993).  Plaintiff's sole factual assertions in this regard are that he believes the arrest to have been unconstitutional and the existence of a criminal record continues to harm his career and reputation.  In light of the fact that the Court has held that the arrest was not unconstitutional and in the absence of any other facts that would render this case "extreme," the court will not expunge Plaintiff's arrest record.

**VIII.    Motion *in Limine***

Given its disposition of the Motions for Summary Judgment, the Court will treat Plaintiff's Motion *in Limine* as moot.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Colombe's Motions for Summary Judgment [Docs. 121, 125] are well-taken and therefore will be **GRANTED** and that all other pending motions are not-well taken and will be **DENIED.  Judgment will be entered by a separate order.**

Dated this 3rd day of December, 2015.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Donald A. Walcott | Philomena Hausler |
| | Erika E. Anderson |
| **Walcott, Henry & Winston, P.C.** | **The Law Offices of Erika E. Anderson** |
| Santa Fe, New Mexico | Albuquerque, New Mexico |
| *Attorney for Plaintiff Clema* | *Attorneys for Defendant Colombe* |